2013 VT 88

# Windham County Sheriff's Department v. Department of Labor

[86 A.3d 410]

No. 12-460

Present: Reiber, C.J., Dooley, Skoglund, Burgess and Robinson, JJ.

Opinion Filed September 27, 2013

2

*Barbara R. Blackman* and *Scarlett S. MacIlwaine* of *Lynn, Lynn & Blackman, P.C.*, Burlington, for Plaintiff-Appellant.

*Dirk Anderson*, Montpelier, for Defendant-Appellee.

¶ 1. **Dooley, J.** Appellant Windham County Sheriff's Department (WCSD) appeals the decision of the Employment Security Board holding it liable for reimbursement of unemployment compensation benefits as a base-period employer of a former employee. WCSD argues that because the employee was terminated for gross misconduct, and because an amendment to the statute governing reimbursement of unemployment compensation benefits that would have removed its liability for payments for employees terminated for gross misconduct took effect before the employee became eligible to receive any benefits, it should not be held liable for reimbursement payments.* We affirm.

---

* Before the Employment Security Board and in its initial brief to this Court, WCSD argued that requiring reimbursement violated the Equal Protection Clause of the Fourteenth Amendment to the United States Constitution and the Common Benefits Clause of Chapter I, Article 7 of the Vermont Constitution. It withdrew these claims in its reply brief. We have not considered them.

¶ 2. The employee worked as a deputy sheriff in the Windham County Sheriff's Department and was discharged for theft of department equipment. His last day of work was March 2, 2011, after which he filed a claim for unemployment benefits. By notice dated April 18, 2011, the Vermont Department of Labor found that the employee had been discharged for "gross misconduct connected with his . . . work," 21 V.S.A. § 1344(a)(2)(B), and that he was "disqualified for benefits for the week ending March 26, 2011 and until [he had] earned wages in excess of six times [his] weekly benefit amount." The notice also stated that "[a]ny employer liable to reimburse the fund for benefits paid in accordance with 21 V.S.A. § 1321(c)(5) cannot be relieved of charges by this determination."

¶ 3. ■ WCSD has elected to be a "reimbursable employer" under § 1321(e). This means that rather than paying an unemployment tax, WCSD must reimburse the unemployment trust fund for unemployment compensation benefits paid to a former employee under circumstances chargeable to the employer. A "reimbursable employer" is the type of employer referenced in the notice sent by the Department of Labor to WCSD.

¶ 4. ■ At the time that this initial determination was made, § 1338(e) provided that an individual's weekly benefit amount — and thus the reimbursable employer's obligation under § 1321(c)(5) — was to be computed in a way that included wages earned in a position from which the individual was terminated for gross misconduct. On July 1, 2011, however, an amendment to that law came into effect whereby "[t]he base period wages shall not include any wages paid by an employing unit based on a separation for gross misconduct." *Id.* § 1338(e).

¶ 5. After returning to work for a time at a covered employer and meeting the requirements set out in the April 18 notice, the employee became unemployed and successfully filed for benefits for the week ending December 24, 2011. In March 2012, he successfully applied for the next year's benefits. WCSD was charged for benefits both in the benefit year ending March 17, 2012 and for the benefit year ending March 16, 2013, as provided in the pre-July 1, 2011 version of the statute. A claims adjudicator of the Department of Labor notified the employer that it was being charged for reimbursement of the employee's compensation on February 15, 2012, and WCSD petitioned for a hearing,

arguing that the new version of the statute should apply and it should not be liable for the employee's benefits. An administrative law judge upheld the Department of Labor's determination, as did the Employment Security Board. This appeal followed.

¶ 6. When reviewing decisions of the Employment Security Board, we "generally defer to its interpretations of the statutes it is charged with administering." *Blue v. Dep't of Labor*, 2011 VT 84, ¶ 6, 190 Vt. 228, 27 A.3d 1096; see *In re Porter*, 2012 VT 97, ¶ 8, 192 Vt. 601, 70 A.3d 915 ("We defer to an administrative agency's interpretation of statutory provisions that are within its particular area of expertise." (quotation omitted)). "Our standard of review is based, however, on the nature of the [agency]'s expertise and the appropriateness of paying deference to it." *Porter*, 2012 VT 97, ¶ 8 (quotation omitted). Because the questions in this case are of the statutory construction and retroactivity of provisions not involving any facts or employment-specific knowledge, our review is de novo. See *id.* ¶ 9.

¶ 7. ■ On appeal, WCSD argues that the employee became eligible to receive benefits only once he had earned wages in excess of six times his weekly benefit amount, as reflected in the April 18, 2011 notice, and that the date that controls which statute to apply is therefore that of his *reapplication* for benefits on December 24, 2011. We cannot accept that argument. Pursuant to 1 V.S.A. § 214(b)(2), the amendment of a statutory provision shall not "[a]ffect any right, privilege, obligation or liability acquired, accrued or incurred prior to the effective date of the amendment or repeal." The question, then, of what version of the statute should be applied to WCSD depends on when WCSD's liability accrued.

¶ 8. ■ According to 21 V.S.A. § 1301(23), a "valid claim" for unemployment compensation benefits is established by a determination of monetary eligibility at the time that an initial claim is filed. At that time, the liability of the employer is established — which would or would not include liability based on wages paid to an individual terminated for gross misconduct, depending on which version of § 1338(e) is applicable at that time. Reimbursable employers like WCSD are then responsible for payments towards the employee's unemployment compensation based on this liability, *id.* § 1321(c)(5), without the need for any new adjudication of that liability.

¶ 9. In essence, employee was found eligible for unemployment compensation benefits in March 2011, but was required to go through a disqualification period before he received the unemployment compensation benefits. A "valid claim" is a "*prerequisite* to the making of a . . . determination of an individual's disqualification for benefits under section 1344 of this title." *Id.* § 1301(23) (emphasis added). That sentence makes clear that the "valid claim" does not disappear with disqualification — all the disqualification means is that the individual cannot receive the benefits of a valid claim until certain requirements are met. The claim itself — and the liability of the employer associated with it — survives.

¶ 10. Because a "liability" is established at the point of making a valid claim, 1 V.S.A. § 214(b)(2) mandates that such liability shall not be changed by the amendment to the statute. As the Employment Security Board pointed out, under our decision in *City of Burlington v. Department of Employment & Training*, 148 Vt. 151, 530 A.2d 573 (1987), based upon the statutes then in effect, a valid claim was determined for employer-charging purposes at the time that the claimant served a disqualification period and became eligible to receive unemployment compensation benefits. That decision would have supported WCSD's argument here. The Legislature, however, subsequently overruled *City of Burlington* by amending § 1301(23), thus eliminating this argument.

¶ 11. We reached a similar question in *Sanz v. Douglas Collins Construction*, 2006 VT 102, 180 Vt. 619, 910 A.2d 914 (mem.), in the context of workers' compensation. The claimant in that case was injured during a time period where one statute was in effect, and then — a number of years later — attempted to take advantage of a subsequent amendment to the applicable statute that would have allowed him to collect a lump-sum payment. The claimant argued that the controlling date for the purpose of determining which version of the statute applied should be the date that he reached a medical end result and was able to begin receiving payments. *Id.* ¶ 8. Finding, however, that the right to compensation of the claimant — or, conversely, the liability of the employer — was acquired at the time of the injury, we held that whether or not the claimant was entitled to receive the payment for other reasons did not affect that fact of the right/liability. We explained:

> Although the time at which a claimant may receive certain benefits while disabled depends on claimant's

medical progress as well as his ability to work, the right to receive the statutorily-defined benefits — the right to compensation — is acquired at the time of the injury. Correspondingly, the obligation to pay those benefits is also governed by the law in force at the time of injury.

*Id.* ¶ 10.

¶ 12. ▇ In this case, the former employee made a "valid claim" when he filed for unemployment compensation benefits soon after being terminated from his job at WCSD, and the Department of Labor determined that he was monetarily eligible for benefits. Although temporary disqualification was then imposed on him, he continued to hold onto his "valid claim," subject only to the satisfaction of the requirements of 21 V.S.A. § 1344(a)(2)(B). Once he was eligible for benefits again, WCSD was automatically liable for reimbursement payments in accordance with § 1321(c)(5). WCSD's obligation to pay is governed by the law in force at the time of the initial claim — the pre-July 1, 2011 version of § 1338(e).

¶ 13. WCSD makes an alternative argument that — whether or not a liability accrued at the time of employee's initial filing — the new version of § 1338(e) should be applied to WCSD's liability because of a statement that we made in *Myott v. Myott*, 149 Vt. 573, 575, 547 A.2d 1336, 1338 (1988): "While, in general, new statutes do not apply to cases that are pending at the time of the effective date of the new statute, there is an exception for statutes that are solely procedural or are remedial in nature." Therefore, WCSD argues, because unemployment legislation is "remedial" in nature, the amendment should be held to be retroactive.

¶ 14. This argument misses the mark, and echoes one that we faced in *Sanz.* 2006 VT 102, ¶ 15 ("Claimant's attempt to construe [the] language [of *Myott*] as an alternate basis for application of an amended statute, independent from 1 V.S.A. § 214, is misplaced."). We explained there that the quoted language from *Myott*

> derives from general statements of statutory construction in the early case of *Murray v. Mattison*, 63 Vt. 479, 21 A. 532 (1891), and a leading treatise on statutory construction. *Myott*, 149 Vt. at 575, 547 A.2d at 1338. Neither provides a basis to override the plain language of 1 V.S.A. § 214.

*Id.* ¶ 15 n.3. We also note that the statute here is not procedural, and while the unemployment compensation law may be labeled as remedial overall, it is remedial for the benefit of employees only. It is not remedial for the benefit of employers who want to reduce benefits to employees in order to reduce their contribution liability.

*Affirmed.*